**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN JUSTICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 C 5331** |
| | ) | |
| **TOWN OF CICERO, ILLINOIS and** | ) | |
| **LARRY DOMINICK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

*Pro se* plaintiff John Justice has sued the Town of Cicero and Town President

Larry Dominick.  Justice asserts that Cicero's business-licensing and firearms-

registration ordinances violate his rights under the United States Constitution's Second

and Fourteenth Amendments and the Illinois Constitution.  Defendants previously

moved to dismiss for lack of standing and failure to state a claim pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court granted defendants' Rule

12(b)(1) motion and directed Justice to file an amended complaint. *Justice v. Town of

Cicero*, No. 10 C 5331, slip op. (N.D. Ill. Mar. 11, 2011).  Justice did so, and defendants

filed a new Rule 12(b)(6) motion in response.  For the reasons stated below, the Court

grants the motion.

**Background**

The Court assumes familiarity with its earlier decision on defendants' motion to

dismiss, which provided a summary of the factual and legal allegations underlying Justice's claims.  Justice's amended complaint, filed after the Court's earlier decision, contains additional factual allegations, which the Court summarizes below.  The Court accepts these facts as true for purposes of deciding defendants' motion to dismiss. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

Justice owns a manufacturing business in Cicero.  He alleges that Cicero police entered his business, seized fourteen firearms, and arrested and briefly incarcerated him.[1]  The police also closed his business because he was operating it without a license.  They put up police tape and signs prohibiting entry, which Justice claims damaged his reputation and caused his customers to cease buying from him.  Justice sued Cicero and several Cicero employees shortly thereafter.  Judge Wayne Anderson dismissed his lawsuit, the Seventh Circuit affirmed the dismissal, and the Supreme Court denied certiorari.  This Court's previous decision provides further details regarding Justice's earlier suit.  In the present case, which Justice filed four years later based on the same incident, he seeks a declaratory judgment and an injunction prohibiting Cicero from enforcing its firearms-registration and business-licensing ordinances against him.

Cicero's firearms ordinance provides that "[a]ll firearms in the town shall be registered in accordance with this division."  Town of Cicero Code § 62-260.  Section

---

[1]Justice's amended complaint does not say when or why this occurred, but the district court's decision in his previous lawsuit indicates that the search took place on February 24, 2006 pursuant to an administrative search warrant. *Justice v. Town of Cicero*, No. 06 C 1108, 2007 WL 2973851, at *1 (N.D. Ill. Oct. 7, 2007).

62-262(a) of the ordinance requires that any person issued a registration certificate:

> (1)  Shall possess a valid Illinois Firearm Owner's Identification Card in accordance with 430 ILCS 65/4, as amended;
> (2)  Has not been convicted of a crime of violence, as defined in this division as weapons offense, or a violation of this division;
> (3)  Has not been convicted within the five years prior to the application of any violation of:
>> a.  Any law relating to the use, possession or sale of any narcotic or dangerous drug; or
>> b.  The provisions of 720 ILCS 5/12-2(a)(1), as amended, for aggravated assault or any similar provision of the law of any other jurisdiction;
> (4)  Has vision better than or equal to that required to obtain a valid driver's license under the standards established by 625 ILCS 5/6-109; and
> (5)  Is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance.

Section 62-261 prohibits the issuance of registration certificates for sawed-off shotguns, machine guns, short-barreled rifles, firearm mufflers, firearm silencers, and assault weapons.  Sections 62-262(b) and 62-264 require applicants for registration certificates to provide the following to Cicero's director of public safety:  a $25 non-refundable application fee; the applicant's name, social security number, addresses, age, sex, and citizenship; the applicant's firearm owner's ID number; two photographs; information about the firearm and the source from which it was obtained; evidence that the applicant meets the criteria for registration; and "[s]uch other information as the director of public safety shall find reasonably necessary to effectuate the purpose of this division and to arrive at a fair determination whether the terms of this division have been complied with."  Finally, section 62-259 authorizes fines of $250 to $750 for violations of the ordinance.

## Discussion

Defendants have moved to dismiss Justice's complaint pursuant to Rule

12(b)(6).  They contend that:  (1) the doctrine of claim preclusion bars his suit; (2)

Cicero's firearm ordinance does not violate the Second Amendment; (3) Cicero's

business-licensing ordinance does not violate the Illinois Constitution; (4) Justice's

official capacity claims against Dominick rely impermissibly on *respondeat superior*

liability; (5) qualified immunity shields Dominick from liability for damages; and (6) the

Illinois Local Governmental and Governmental Employees Tort Immunity Act bars all

claims for monetary relief.

On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in

the complaint as true and draws reasonable inferences in favor of the plaintiff.  *Hallinan*,

570 F.3d at 820.  To survive the motion, the complaint must include enough facts to

state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1950 (2009).  A claim is plausible on its face "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.* at 1949.

## I.      Claim preclusion

Defendants' contention that Justice's claims are barred by the doctrine of claim

preclusion, also known as res judicata, constitutes an affirmative defense.  A plaintiff

typically is not required to anticipate affirmative defenses in his complaint, and his

failure to do so typically does not entitle a defendant to dismissal under Rule 12(b)(6).

A defendant may, however, properly raise claim preclusion in a motion to dismiss if the

plaintiff "plead[s] himself out of court" by alleging facts that establish the defense.

*Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).  A court may take judicial

4

notice of public court documents and may consider those documents along with the allegations in the complaint without converting a motion to dismiss to a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

A final judgment on the merits of an action precludes the parties to that action and their privies from re-litigating claims that were or could have been raised in the action. *Allen v. McCurry*, 449 U.S. 90, 93 (1980). To establish that claim preclusion warrants dismissal of a suit, a defendant must prove three elements: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits in the earlier suit. *Andersen v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996). "The preclusive effect of a federal-court judgment is a matter of federal common law." *Firishchak v. Holder*, 636 F.3d 305, 308 (7th Cir. 2011) (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)).

Justice asserted in his earlier suit his claim that Cicero's business-licensing ordinance is unconstitutional. Although Justice has added Dominick as a defendant, the parties are the same as those in the previous case because "[a] government and its officers are in privity for purposes of res judicata." *Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983). The cause of action is also the same, and the previous courts rendered final judgments on the merits. *See Justice v. Town of Cicero*, 577 F.3d 768, 771-72 (7th Cir. 2009) ("*Justice I*").

Justice does not dispute this. Instead, he asserts that "the issue of business licensing has never been properly addressed" because the attorney who formerly represented him did not put forth Justice's preferred factual allegations or legal

5

arguments. Pl.'s Resp. at 17.

Even if Justice is correct that his attorney did not assert the right arguments in the earlier suit, additional factual allegations do not "preclude the operation of res judicata when these facts were available to [plaintiff] at the time it filed its [original] complaint." *Magnus Elecs., Inc. v. La Republica Argentina*, 830 F.2d 1396, 1401 (7th Cir. 1987). Nor does inadequate legal representation permit a plaintiff to "drag[] the opposing party through another trial." *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001). Instead, this gives rise only to the remedy of a malpractice action against the lawyer. *Id*. The Court concludes that claim preclusion bars Justice's business-licensing claim.

Justice's claims under the Second Amendment and the Illinois Constitution regarding the firearms ordinance also meet the three-factor test for claim preclusion for the same reasons just discussed. Despite this, Justice argues that in light of the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the underlying law has changed so significantly that claim preclusion no longer applies to his Second Amendment claim. Both parties cite to Illinois law for the principle that a change in the law may sometimes defeat claim preclusion. Because, however, Justice's previous case was decided in federal court., its preclusive effect is "a matter of federal common law." *Firishchak*, 636 F.3d at 308.

Unlike Illinois law, federal common law generally does not allow new precedent to defeat claim preclusion. Though a change in statutory law may give rise to a new

6

cause of action, "changes in case law almost never provide a justification for instituting a new action arising from the same dispute that has already been litigated to a final judgment." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.")).

Several circuits have, however, recognized an exception to this rule. Those courts have declined to apply claim preclusion when the intervening decisions comprise "moment[ous] changes in important, fundamental constitutional rights." *Precision Air Parts, Inc. v. Avo Corp.*, 736 F.2d 1499, 1504 (11th Cir. 1984). Claim preclusion "may be relaxed when the dispute involves matters of special sensitivity [such as the] development of constitutional principles in cases that challenge continuing conduct of broad public importance." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4415 at 372 (2002 & Supp. 2011). The Fifth Circuit invoked this doctrine when it declined to apply claim preclusion and struck down a segregated-seating ordinance that had been challenged unsuccessfully before the Supreme Court's decision in *Brown v. Board of Education*, 347 U.S. 483 (1954). The court stated that "[i]t would be a senseless absurdity to sanction in Baton Rouge segregated seating under a law patently unconstitutional while everywhere else in the country segregated seating is prohibited. The Constitution is not geared to patchwork geography. It tolerates no independent enclaves." *Christian v. Jemison*, 303 F.2d 52,

55 (5th Cir. 1962).

The Sixth Circuit similarly recognized an exception to claim preclusion for a woman who had been denied Social Security widow's benefits and brought a new claim after the Supreme Court recognized the fundamental right to marry, which altered her status. The widow's claim was not precluded because she "could not have anticipated raising this constitutional challenge in her prior applications." *Carver v. Sec'y of HHS*, 869 F.2d 289, 292-93 (6th Cir. 1989). The Fourth Circuit affirmed a denial of the application of claim preclusion in a case challenging the constitutionality of mandatory student fees under the Fourteenth Amendment in light of a recent Supreme Court decision on that point. The court stated that "a state instrumentality should not be allowed to hide behind [the previous] judgment with the possible result that individual constitutional liberties are denied. Relitigation of an issue of public importance should not be precluded when there has been an intervening change in the applicable legal context." *Kania v. Fordham*, 702 F.2d 475, 476 n.2 (4th Cir. 1983).

The Seventh Circuit has neither adopted nor rejected this principle. If it chose to follow its sister circuits' reasoning, however, it seems highly likely that the court would find that there has been a momentous change in Second Amendment law since Justice litigated his earlier claims in the district court. *See, e.g.*, *United States v. Booker*, 644 F.3d 12, 22 (1st Cir. 2011) (noting that *Heller* "announc[ed] a significant new understanding of the Second Amendment"); *United States v. Masciandaro*, 638 F.3d 458, 465 (4th Cir. 2011) (describing the "watershed" decision in *Heller*). Moreover, *Heller*, in which the Supreme Court held that the Second Amendment "secures an

8

individual right to keep and bear arms," the denial of which causes severe harm by infringing on "intangible and unquantifiable interests," *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), clearly implicates important constitutional rights.

The Seventh Circuit, however, issued its decision in Justice's previously case after the Supreme Court decided *Heller*. *See Justice I*, 577 F.3d at 774. Because the *Justice I* decision predated *McDonald*, in which the Supreme Court determined that the Second Amendment applies to states and their subdivisions, the Seventh Circuit did not apply the *Heller* rule to Cicero's ordinance. The court had recently adopted a rule against incorporation and found that Justice had no viable claim on that basis. The court's decision did anticipate, however, that the Supreme Court might go the other way:

> If, as we have held, the Second Amendment does not apply to the states and their subdivisions, then Justice has no case. Even if we are wrong and the Ninth Circuit has proven to be the better predictor of the Supreme Court's rulings, there is a critical distinction between the D.C. ordinance struck down in *Heller* and the Cicero ordinance. Cicero has not prohibited gun possession in the town. Instead, it has merely regulated gun possession under § 62-260 of its ordinance. The Town does prohibit the registration of some weapons, but there is no suggestion in the Complaint or the record that Justice's guns fall within the group that may not be registered. Nor does *Heller* purport to invalidate any and every regulation on gun use; to the contrary, the Court in *Heller* disclaims any such intent . . . . Thus, even if we are wrong about incorporation, the Cicero ordinance, which leaves law-abiding citizens free to possess guns, appears to be consistent with the ruling in *Heller*.

*Id.* at 774 (citations omitted).

Accordingly, the question before the Court is therefore not whether *Heller* itself worked a sufficient change in the law to allow Justice to start a fresh lawsuit, but whether *McDonald* and other post-*Heller* developments have done so. The Court

concludes that they have.  In Justice's earlier appeal, the Seventh Circuit was not called upon to decide conclusively the constitutionality of Cicero's firearms-registration law. Though the court touched upon the issue, the language of its decision, particularly its use of the word "appears," indicates that its conclusion was tentative rather than a definitive pronouncement.  The court did not analyze the language or specific provisions of the Cicero ordinance.  Rather, it said only that the ordinance "merely regulated gun possession" without going into further detail.

The fact that the Seventh Circuit's comments regarding the Cicero ordinance was not a conclusive determination of constitutionality is further highlighted by the Seventh Circuit's post-*McDonald* jurisprudence.  Recently, in *Ezell*, the court examined a Chicago ordinance that required a person to undergo firearms training at a firing range before obtaining a handgun license, while at the same time forbidding firing ranges from operating within the city limits.  Although the Seventh Circuit remanded the case to the district court for further analysis of the ordinance, the court strongly suggested that it considered the ordinance to be overly burdensome and to interfere unduly with the right to bear arms.  *See Ezell*, 651 F.3d at 710.  This suggests that an ordinance that, like Cicero's, "has not prohibited gun possession" *per se* and that therefore "leaves law-abiding citizens free to possess guns," *see Justice I*, 577 F.3d at 774, is not automatically consistent with *Heller*.  In addition, *Ezell* also laid out a standard of review for Second Amendment cases in light of both *Heller* and *McDonald* that the court in *Justice I* had not established.  *See Ezell*, 651 F.3d at 700-04.

For these reasons, the Court concludes that *Heller* and *McDonald*, taken

10

together, constitute a fundamental change in constitutional law that is sufficient to defeat claim preclusion in Justice's case. No court has fully analyzed his claim under the combined framework of *Heller* and *McDonald*. The Court therefore declines to rule that Justice's Second Amendment claim is barred by claim preclusion.

## II.     Second Amendment challenge

### A.     Justice's claims

Justice argues in his response to defendants' motion to dismiss that Cicero's refusal to register several classes of weapons violates the Second Amendment. As was true in his previous case, however, "there is no suggestion in the Complaint or the record that Justice's guns fall within the group that may not be registered." *Justice I*, 577 F.3d at 774. Justice thus has no injury resulting from these provisions of the ordinance and thus no standing to challenge them. Rather, the Court confines its analysis to the basic registration requirement contained in the ordinance. Justice's complaint and his brief likewise do not challenge certain restrictions in the ordinance on who may register, such as those prohibiting persons convicted of violent or drug-related crimes or with less-than-adequate vision from doing so. Thus the Court is not called upon to address those provisions of the Cicero ordinance. Rather, Justice's attack focuses on the ordinance's registration requirement and its imposition of a registration fee.

Justice argues that the ordinance's registration requirement is unconstitutional both on its face and as applied to him. "[A] successful facial attack means the statute is wholly invalid and cannot be applied to anyone." *Ezell*, 651 F.3d at 698. As in *Ezell*,

Justice's claim is that the ordinance "impermissibly burdens the core Second Amendment right to possess firearms at home for protection. . . . If [he is] right, then the [ordinance] was unconstitutional and violates [his] Second Amendment rights every day it remains on the books. These are not application-specific harms calling for individual remedies." *Id*. The Supreme Court has concluded, however, that a plaintiff "to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). Because the Court concludes below that the statute was constitutionally applied to Justice, it need not consider his facial challenge.

Justice's central contention is that a person may not be required to register or pay any sort of fee in order to "exercise a core constitutional right." Pl.'s Resp. at 3. With respect to the ordinance's fee provision, Justice does not contend that he was unable to pay the fee and does not challenge the amount charged. Rather, he asserts that a fee requirement is inherently invalid.

The Court disagrees. The district court on remand in *Heller* found valid a similar provision in the registration ordinance it examined because the fees were intended to defray costs associated with registration, including "fingerprinting registrants, . . . processing applications and maintaining a database of firearms owners." *Heller v. District of Columbia*, 698 F. Supp. 2d 179, 192 (D.D.C. 2010), *rev'd in part on other grounds*, 2011 WL 4551558 (D.C. Cir. Oct. 4, 2011). There is no indication that Cicero's fee was imposed for any other purpose.

In *Cox v. New Hampshire*, 312 U.S. 569 (1941), the Supreme Court held that a fee for a parade permit did not violate the First Amendment. Like the fee in that case, Cicero's registration fee "take[s] into account the greater public expense" and is "not a revenue tax, but one to meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed. There is nothing contrary to the Constitution in the charge of a fee limited to the purpose stated." *Id.* at 577 (internal quotations and citation omitted). The Court concludes that Cicero's firearms-registration fee does not run afoul of the Second Amendment.

Justice's main argument concerns the registration requirement. As a threshold matter, he contends that "[j]ust as a person may not be required to register to exercise religion, to engage in free speech, or to assemble peaceably, a person may not be required to register merely to possess a firearm in his home or small business." Pl.'s Resp. at 5-6.

In the face of a similar challenge, the district judge considering *Heller* on remand noted that "the Supreme Court has held that [firearms] registration and licensing schemes are permissible in other contexts so long as they do not excessively impinge on the constitutional right." *Heller*, 698 F. Supp. 2d at 190 (citing *Cox v*, 312 U.S. at 576-78). When the D.C. Circuit considered the case on appeal ("*Heller II*"), it upheld the portion of the district court's decision that found constitutional the District of Columbia's basic firearms-registration requirements. It noted that "basic registration requirements are self-evidently de minimis, for they are similar to other common registration or licensing schemes, such as those for voting or for driving a car, that

13

cannot reasonably be considered onerous." *Heller II*, 2011 WL 4551558, at *7 (citing

*Rosario v. Rockefeller*, 410 U.S. 760 (1973)).

The Court finds this reasoning persuasive. A firearms-registration requirement,

though not automatically valid, is not invalid simply because it regulates the exercise of

a constitutional right. As the Supreme Court stated in *Cox* while upholding a parade-

permitting requirement against a First Amendment challenge,

> Civil liberties, as guaranteed by the Constitution, imply the existence of an
> organized society maintaining public order without which liberty itself would be
> lost in the excesses of unrestrained abuses. The authority of a municipality to
> impose regulations to assure the safety and convenience of the people . . . has
> never been regarded as inconsistent with civil liberties but rather as one of the
> means of safeguarding the good order upon which they ultimately depend.

*Cox*, 312 U.S. at 574. Significantly, the Court noted that "the licensing board was not

vested with arbitrary power or an unfettered discretion" and that "its discretion must be

exercised with uniformity of method of treatment upon the facts of each application." *Id.*

(internal quotation marks omitted). Justice does not suggest that anything other than

this sort of neutral consideration occurs in Cicero's registration process.

Justice cites *United States v. Miller*, 307 U.S. 174 (1939), in support of his

argument that the Second Amendment categorically precludes registration. *Miller*

"upheld against a Second Amendment challenge two men's federal indictment for

transporting an unregistered short-barreled shotgun in interstate commerce." *Heller*,

554 U.S. at 621-622. In *Heller*, the Supreme Court stated that *Miller* "say[s] only that

the Second Amendment does not protect those weapons not typically possessed by

law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id*. at 625.

Justice argues that this means that any weapons "protected" by the Second

14

Amendment are therefore exempt from registration: "Protect such weapons from what? Registration . . . . The premise of *Miller* and *Heller* alike is that a firearm protected by the Second Amendment may not be required to be registered." Pl.'s Resp. at 4.

This is a *non sequitur*. It is true that *Heller* explained that "the type of weapon at issue [in *Miller*] was not eligible for Second Amendment protection." *Heller*, 554 U.S. at 622. Beyond that, however, *Miller* "provided no explanation of the content of the [Second Amendment] right." *Id.* Neither *Miller* nor *Heller* holds that weapons that are protected by the Second Amendment can never be subject to restrictions. To the contrary, the Court specifically noted in *Heller* that "the right secured by the Second Amendment is not unlimited [and is not] a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 626.

For these reasons, the Court disagrees with Justice's threshold argument that a firearms registration requirement is automatically invalid. A determination that the Second Amendment protects possession of a certain type of firearm is simply the first step in the constitutional analysis of whether a regulation concerning possession of that firearm is permissible. The Court explains below the framework for this analysis.

## B. Second Amendment framework

The Seventh Circuit has considered several gun-control cases since the decision in *McDonald*. It has upheld categorical bans on gun possession by illegal drug users, *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010), as well as by those convicted of felonies and domestic violence offenses. *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc). In doing

15

so, the court made clear that the Second Amendment right of an individual to possess firearms "is not unlimited," and it also "rejected the notion that only exclusions in existence at the time of the Second Amendment's ratification are permitted." *Yancey*, 621 F.3d at 683.

In *Ezell*, the Seventh Circuit clarified the framework that courts are to use when considering Second Amendment challenges. "First, the threshold inquiry in some Second Amendment cases will be a 'scope' question: Is the restricted activity protected by the Second Amendment in the first place?" *Ezell*, 651 F.3d at 701. In *Ezell*, the restricted activity was target practice at a firing range. In Justice's case, the restricted activity is simply an individual's possession of otherwise lawful firearms for self-defense. There is no question that this is protected by the Second Amendment.

If the regulated activity is protected, "there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id*. at 703. This inquiry "requires [a court] to select an appropriate standard of review." *Id*. at 706. "Borrowing from the Court's First Amendment doctrine, the rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Id*. at 703.

The D.C. Circuit's analysis in *Heller II*, although it phrased the two-step approach differently, is instructive on the question of how close a registration requirement comes to the "core of the Second Amendment right." *Id*. The court asked first "whether a particular provision impinges on a right protected by the Second Amendment." *Heller II*,

16

2011 WL 4551558, at *6.  It concluded that D.C.'s registration requirement did not do

so, largely because of the long history of imposing such requirements.  "*Heller* tells us

'longstanding' regulations are 'presumptively lawful,' that is, they are presumed not to

burden conduct within the scope of the Second Amendment."  *Id.* (quoting *McDonald*,

130 S. Ct. at 3047 ("[*Heller*] did not cast doubt on [certain types of] longstanding

regulatory measures")).  The court noted that the requirement "that a person provide to

the local Government a modicum of information about the registrant and his firearm"

was longstanding, "accepted for a century in diverse states and cities and now

applicable to more than one fourth of the Nation by population."  *Id.* at *6-7.  It cited the

laws of several states that adopted registration requirements early on, including Illinois,

which did so in 1881.  *Id.* at *7.  The court upheld "the requirement of mere registration

because it is longstanding, hence 'presumptively lawful,' and the presumption stands

unrebutted."  *Id.* at *6.

In addition to being longstanding, registration requirements like the one Cicero

has imposed do not severely burden the practical exercise of the right to possess

firearms for self-defense.  The court noted in *Ezell* that "laws that merely regulate rather

than restrict, and modest burdens on the right may be more easily justified" than those

placing a "severe burden" on the right.  *Ezell*, 651 F.3d at 708.  As the Seventh Circuit

pointed out in Justice's earlier appeal, Cicero's registration requirement has not

prohibited gun possession by those otherwise entitled to possess firearms.  Rather, it

has "merely regulated" gun ownership.  *Justice I*, 577 F.3d at 774.  The D.C. Circuit

similarly distinguished simple registration from burdensome requirements that "make it

considerably more difficult for a person lawfully to acquire and keep a firearm, including a handgun, for the purpose of self-defense in the home." *Heller II*, 2011 WL 4551558, at *8. By contrast, the court in *Ezell* noted that practicing in order to maintain firearms proficiency was a core aspect of the Second Amendment right – one that was effectively prohibited by the firing-range ban at issue in that case. Cicero's "mere regulation" is easily distinguishable from that sort of prohibition.

In sum, Cicero's ordinance does not significantly restrict the exercise of Second Amendment rights. This suggests that the Court should apply a relatively permissive standard of review. The Seventh Circuit in *Skoien* required the government to make "some form of strong showing ('intermediate scrutiny,' many opinions say)" in support of a ban on firearms possession by domestic-violence perpetrators. *Skoien,* 614 F.3d at 641. The court in *Ezell* later noted that this "was appropriate . . . because the claim was not made by a law-abiding, responsible citizen . . . nor did the case involve the central self-defense component of the right." *Id.* at 708 (citations and internal quotation marks omitted). By contrast, *Ezell* required "a more rigorous showing . . . if not quite 'strict scrutiny'" because the plaintiffs in that case were law-abiding citizens, "their claim [came] much closer to implicating the core of the Second Amendment right," and the firing-range ban was "not merely regulatory" but fully prohibited the plaintiffs from engaging in an activity. *Id.*

The Court concludes that Cicero need make no more than the "strong showing" required in *Skoien* to sustain its registration requirement. Although the court in *Ezell* deemed the *Skoien* prohibition on gun ownership by perpetrators of domestic violence

to be less serious than a firing-range ban, *Skoien* still considered a "categorical limit on the possession of firearms." *Skoien*, 614 F.3d at 641. Here, although Justice appears to be an otherwise law-abiding citizen, the registration requirement is "merely regulatory" as described above. As such, it does not place a categorical limit on his possession of firearms.

The court in *Skoien* defined a "strong showing" as a demonstration that a law is "substantially related to an important governmental objective." *Id*. at 641. It then concluded that "logic and data establish a substantial relation" between the domestic-violence categorical limit and the "important governmental objective" of "preventing armed mayhem." *Id*. at 642.

Logic and data likewise support the relationship of firearms registration to Cicero's goal of "protecting the public and promoting community safety." Def.'s Resp. at 6. On remand in *Heller*, the district court began by noting that the Supreme Court in *Heller* itself had "suggested . . . that [registration] requirements are not unconstitutional as a general matter" because the holding of that case was that D.C. had to permit the plaintiff to "register his handgun" and "issue him a license to carry it in the home." *Heller*, 698 F. Supp. 2d at 190 (quoting *Heller*, 554 U.S. at 635). The district court also pointed out that the Supreme Court had affirmed a D.C. Circuit ruling that "classified registration requirements as a 'reasonable restriction.'" *Id*. at 190 (quoting *Parker v. District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007)).

The district court in *Heller* then listed the government's reasons for imposing registration requirements, which were based on the District's intent to

19

give[ ] law enforcement essential information about firearm ownership, allow[ ] officers to determine in advance whether individuals involved in a call may have firearms, facilitate[ ] the return of lost or stolen firearms to their rightful owners, assist[ ] law enforcement in determining whether registered owners are eligible to possess firearms or have fallen into a prohibited class, permit[ ] officers to charge individuals with a crime if an individual is in possession of an unregistered firearm, and permit[ ] officers to seize unregistered weapons.

*Id*. The court had "no trouble concluding that these goals constitute an important governmental interest." *Id*. at 190-91 (citing *United States v. Salerno*, 481 U.S. 739, 748-50 (1987) (noting that "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest.")). The court also found the registration scheme to be sufficiently "related to the goal of public safety," relying substantially on the principle that "legislative bodies are 'far better equipped than the judiciary to amass and evaluate the vast amounts of data bearing on legislative questions.'" *Id*. at 191 (quoting *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 520 U.S. 180, 195 (1997)). As described above, the D.C. Circuit affirmed on appeal this analysis of basic firearm registration requirements.

In *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), the Third Circuit considered the constitutionality of a prohibition on possession of a handgun with an obscured serial number. Applying intermediate scrutiny, the court found that the purpose of the statute was to "regulat[e] the manner in which persons may lawfully exercise their Second Amendment rights." *Id*. at 97. It then found that the requirement would survive either intermediate or strict scrutiny because it served valuable government purposes, including keeping weapons away from dangerous persons, allowing the police to trace weapons to persons who commit crimes, matching ballistics

data, tracing the chain of custody in order to provide agencies with criminology statistics, and identifying dealers involved in firearms trafficking. *Id*. at 98-100.

The Court finds the reasoning in these cases persuasive. Registration requirements effect a similar outcome as prohibitions on guns without serial numbers – providing the government with basic information about who possesses or has possessed a weapon – and serve similar purposes. Justice does not contend in his complaint or his response brief that Cicero's registration requirement serves no valid purpose or that it fails in its goals.

### Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss Justice's complaint [docket no. 40]. The Clerk is directed to enter judgment in favor of the defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 25, 2011